Good morning, your honors, and may it please the court, Alexandra Yates on behalf of defendant appellant Medhi Ilkhani, who's appealing the district court's revocation of his supervised release. And your honors, Mr. Ilkhani has already served his entire revocation sentence, and the parties agree that this case is moot. So the only issue for this court is what to do with the case now. And the government asked this court to simply dismiss the appeal, but we believe that there's an additional step that is appropriate, and that is to vacate the supervised release revocation that Mr. Ilkhani never had a chance to obtain the appellate review of, of whether it was lawful. And your honors, it's very well established that if this were a civil case, the remedy we're asking for would be the correct one, and not just correct, but virtually automatic. So I think there are two questions we need to ask. One is whether that vacatur doctrine that comes from the Supreme Court case Munsingware applies in the criminal context. And then second, if it does, should it be applied in this case? So let me take those in order. I would argue, your honors, that there's no principled reason at all not to extend the vacatur doctrine into this context. The point of it is to afford, excuse me, avoid giving preclusive effect to a decision that was never subjected to appellate review. The Munsingware decision by the Supreme Court calls a ruling before appeal one which in the statutory scheme was only preliminary. Isn't your theory, though, foreclosed by Spencer? No, your honor, I don't believe it is. Under Spencer, we do not have Article III standing. And that is why the cases moot. But Spencer does not go into whether it's appropriate to vacate the underlying supervised release revocation. And in fact, this case in Tapia, this court in Tapia Marquez suggested that it might be appropriate in certain circumstances. In that particular case, this court held that it wasn't appropriate because the only issue that the defendant there had raised was squarely foreclosed by a binding precedent. But that's not what we have here. We've raised three issues of constitutional magnitude. And although the government has responded to two of those and argued they're debatable, they're surely not foreclosed. Are you suggesting, then, that we would apply this Munsing rule to vacate any revocation of supervised release that expires before the argument or before the court can hear the appeal? Well, I don't believe this is a situation that comes up frequently, as we can see. But there's a lot of short sentences imposed in revocation proceedings. But one is, so I don't know that it would be unusual. Because oftentimes, if somebody comes in and violates, they'll get time served. And then the short amount of time, maybe three months in addition to that. So are you suggesting that we should apply it every time? What I'm suggesting is that if the defendant there raises an appeal, which I think is a practical matter, does not happen all of the time, and in that appeal raises issues that are not squarely foreclosed, and that were he to have the opportunity to have them decided. Well, that's helpful. Because I wanted to know if you thought it should just happen every time. Or if you're suggesting we somehow look at the merits of the appeal before we decide to apply the rule. Is that what you're suggesting? Well, I think if Tapio Marquez did not exist as precedent, I might go further. But with Tapio Marquez, I think I have to acknowledge that whether the issues are foreclosed is a relevant consideration, not just what the Supreme Court and other circuits have said, which is purely, did you cause the mootness? But I think foreclosed is different than going to the merits. I think that Tapio Marquez was a kind of unique, almost sui generis case, where there was a single issue that had just been squarely decided. And I don't believe that the defendant in that case argued any distinctions. That's very different from looking beyond the face of the issue to go to the merits of them, which I don't think would be appropriate, because that would undermine the whole principle of mootness. So you think there's some sort of land in between, looking at the merits? I think in light of Tapio Marquez, I have to concede that there must be. Again, without Tapio, I understand the difficulty there. And what in Tapio Marquez is persuading you to say that? Well, it seems that Tapio Marquez added a layer onto what is otherwise the vacatur doctrine. The vacatur doctrine typically would simply look to whether the party caused the mootness, and that would be it. It seems that in Tapio Marquez, this court went further and said, well, but that's not entirely it, because here the issue is, the sole issue, is squarely foreclosed by precedent, and thus vacatur is not going to be appropriate. It was almost part of the equitable balancing, I would say, of course, vacatur being an equitable remedy. I would point out, I'm struggling with whether to apply Munsingware in the criminal context. There are differences between civil and criminal cases, and Munsingware indicated that its purpose was, and I'm quoting now, to clear the path for future relitigation of the issues between the parties and prevent unreviewed judgments from spawning legal consequences. How is that purpose implicated in this criminal case? Yes, Your Honor. That is certainly one of the purposes that Munsingware cited. Munsingware also said that part of its reasoning was that those who have been prevented from obtaining the review to which they are entitled should not be treated as if there had been a review. And the D.C. Circuit, I would suggest if this Court does not apply Munsingware in the criminal context, there would be a circuit split, at least with the D.C. Circuit and the Fifth Circuit, and I'm referring to the Schaeffer and Sarmiento cases that we've cited. And in Schaeffer, what the D.C. Circuit said was an appeals process that's been terminated prematurely when you have that a final judgment has never been reached on the legality of a conviction. And in that case, in fact, they were somewhat accepting that the defendant might be guilty, but he'd never had that opportunity to which he was entitled. And in fact, I would suggest that the criminal context almost urges the vacant or doctrine even more because we really take very seriously in the criminal context the idea that a conviction is not final until an appeal is terminated. We have all sorts of procedures, the possibility of bond pending appeal, abatement ab initio in a criminal, in a case of a death, very strict procedures that must be followed for a defendant to waive his right to appeal. And even if he does, sometimes the court will even overlook that. So I think we take very seriously in the criminal context the idea that the appeal is part and parcel of whether you've been properly convicted. And certainly here, we argue that there were some very serious problems with the supervised release revocation. Any one of which would have satisfied the judge's sense. That's true. There were three issues. There were three separate allegations. But we've also raised three separate issues. Just the notice one alone goes to all three allegations. There's another one, a confrontation issue that goes to the first. And then the other two, there's a right to association. Certainly those issues are not foreclosed. We would argue that we should win on the merits. But of course, that's not the issue for this court. I gather you do agree, though, we would have to apply Munsingware in order for you to be successful, right? Absolutely. In a criminal context. And that is exactly what we're asking this court to do, just as the DC Circuit has done, just as the Fifth Circuit has done, just as other circuits have done in analogous contexts, just as this court in Tapia Marquez suggested might be appropriate citing these other cases. And then this court in Payton, which is quite squarely a criminal case, also used language talking about how Munsingware ordinarily applies. That was a criminal case, and no distinction was made. Your Honors, I'd like to reserve the balance of time. Thank you. Here. We got one. Good morning, Your Honors. May it please the Court. Lane Dilg on behalf of the United States. Defendant has not identified a single case in a Federal court in which the – in which a supervised release revocation order has been vacated simply because the defendant's appeal became moot. As this Court has already recognized, there are numerous terms of supervised release that would expire within a period that could be presented on appeal. Do you agree with opposing counsel's comments that there would be a circuit split if we went the way that you want us to go? Thank you, Your Honor. I do not agree with defense counsel's comments there. I believe the cases – the criminal cases in which Munsingware has been cited – and I do agree with the Court that Munsingware is squarely a civil case – but the cases that have been cited are distinguishable. In those cases, there were collateral consequences that are recognized by Federal courts, and it was necessary to clear the way for future litigation. Specifically, those cases fall into three categories. There are cases that deal with the legal effect on future cases, so a legal ruling in which the government or defense counsel in future cases could be affected. That would be Payton, Sarmiento, and Poole. Each of those cases dealt with a legal ruling of significance. In this case, you have an oral, unpublished decision of the district judge relating only to one defendant whom both parties agree – for whom both parties agree there are no collateral consequences. The second category would be convictions. Those are unusual cases, including the Pardon case out of the D.C. Circuit, where for some reason a case became moot, but a criminal conviction still stood. Federal courts have repeatedly recognized that criminal convictions are presumed to have collateral consequences. So that is a very unusual situation where for some reason a case became moot, but a criminal conviction was still on the record. Is it not a supervised release conviction, similar in that regard? No, Your Honor. I do not believe it is. I believe that a supervised release revocation order is a different category, and that is recognized by the Court in Spencer. That a supervised release revocation order would not carry the same criminal consequences as a criminal conviction. Well, there are consequences, though, if there is another criminal prosecution. Yes, Your Honor, but the Federal courts have not recognized collateral consequences that occur only if the defendant, again, violates the law. And that would be in Spencer at page 15, 523 U.S. 15, citing the Lane case. Were we to decide this case without making a decision on Munsingware and not publish an opinion, there would be no conflict with there? That's correct, Your Honor. And I believe that this Court could do so under Tapia Marquez. I believe in this case there are careful and reasoned findings by the district court that would be upheld on appeal, and would clearly be upheld on appeal. And part of the reason for my argument there is the standards of review under which this Court would review those findings. The intimate association claim not raised below would be reviewed for plain error, and the cases cited by the defense are distinguishable. Here, there was no specific evidence before the district court that the two individuals in question were actually engaged. But regardless, the better point is that in this case, the condition allowed the defendant to associate with a convicted felon with the permission of the probation officer. And that was not something he had sought. So that makes it distinguishable from Napoleau and Wolfchild, cited by the defense. The factual finding regarding actual notice was made by a preponderance of the evidence and would be reviewed for clear error. The district judge's opinion lays out careful and reasoned findings as to why that decision was made. Specifically, defendants signed more than 10 monthly reports, which are in the record, stating that he had not associated with anyone with a criminal record. Those are signed and is in his name over a period of, I believe, one to two years. There are more than 10 monthly reports bearing his name that state that. Additionally, there was the testimony of the three probation officers going over the conditions one by one with an interpreter of defendant's choosing. And finally, defendant was advised at the sentencing hearing that the standard conditions of the court applied and also that he must follow the orders of the probation officer. And that's in the record at ER-221. Under United States v. Hankson, factual findings are clearly erroneous when, without support and inferences that may be drawn from facts in the record, Your Honors, the government submits that this careful and reasoned finding by the district court under that standard of review, plainly, the defendant could not win on all three How do you distinguish Schaeffer? I think you're ---- Yes, Your Honor. Schaeffer is the case involving a pardon with a criminal conviction. It's an unusual case. It ---- in that case, the defendant was convicted. There were multiple proceedings regarding the validity of those ---- of that conviction that were still in process and before the D.C. Circuit when the defendant was pardoned. Now, the confusing thing about that case ---- Is there any collateral consequences? Your Honor, a criminal conviction is presumed to have collateral consequences. Now, the pardon is an unusual situation where, in theory, the pardon would take care of the collateral consequences, but the criminal conviction, and it was a conviction, was still on the record. And given that, and given that the Court presumes criminal convictions to have collateral consequences, the government would submit that there ---- that the case is distinguishable from this situation. What's the harm to the government if we were to order to vacate here? Your Honor, it's ---- It's fairness to the defendant, you know, and the appeal and the mootness and ---- The government is here primarily out of respect for the district court and in the interest of finality of judgments. The government's concern is also future cases. The terms of supervised release are often short. In this case, the defendant did not seek expedited review. Certainly, there is the fear that appeals would be continually filed in order to achieve vacater. And that is the concern. Okay. Any other questions? Thank you very much. We'll hear rebuttal. Thank you, Your Honors. Just to briefly touch on the merits issues that my friend was discussing, which, of course, have not been subjected to full briefing in this court because the case is moot. The confrontation issue, which goes to the first allegation, is reviewed de novo. It's a legal issue. It was raised below. And I think the authorities are quite persuasive that there was a very clear error here for the second and fifth allegations, which are the other two. The issue of whether Mr. Elkani properly received written notice, because there's no oral notice from the court in that, without the benefit of an interpreter, is again raised below and I think would be subject to de novo review on the legal question there. So there are very substantial issues here. And they're not technicality issues. They're issues about whether Mr. Elkani actually violated his supervised release in a knowing manner. I do believe that this Court would create a circuit split, published or unpublished, if it determined that Monsonware did not apply in this context. No other circuit has seemed to add to the layer of Monsonware some additional looking at the merits of the cases. Now, the circuit has suggested in Tapia Marquez that that's appropriate. But, counsel, how would that be if we just said we don't need jurisdiction? How would that produce a circuit split? I suppose I'm not sure that that would produce quite a circuit split, but I don't think there's any question that this Court has jurisdiction. The case is moot, but the question of vacatur is very clearly within this Court's jurisdictional grasp, as the Supreme Court and other circuits have recognized in applying Monsonware. So I think that's a question squarely presented, and I would just emphasize, it is an equitable consideration. We have presented harms, and I don't believe that the government has truly presented any. Okay. Thank you both for a well-argued case. Case of United States v. Elkani is submitted.
judges: Zouhary, Smith, Murguia